## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUSTAVO ALVARADO, on behalf of himself and all others similarly situated, | Case No.: 19-cv-6438 |
| Plaintiff, | CLASS ACTION |
| vs. | |
| CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| Defendants. | JURY TRIAL DEMANDED |

Gustavo Alvarado ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge. The investigation of counsel included, among other things, a review of CannTrust Holdings Inc. ("CannTrust" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC") and Canada's System for Electronic Document Analysis and Retrieval ("SEDAR"), press releases issued by the Company, media, news and analyst reports about the Company, conference calls with Company executives and investors, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of CannTrust's common stock.

## I.    **INTRODUCTION**

1.    This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC brought by Plaintiff on behalf of a class of all persons and entities who purchased the publicly traded common stock of CannTrust on the New York Stock Exchange

("NYSE") or any U.S.-based trading platform between November 14, 2018 and July 5, 2019, inclusive (the "Class Period").

2.      CannTrust is a Canada-based producer of medical and recreational cannabis. During the Class Period, the Company represented that it operated its 450,000 sq. ft. Niagara Perpetual Harvest Facility greenhouse in Pelham, Ontario, and prepared and packaged its product portfolio at its 60,000 sq. ft. manufacturing "centre of excellence" in Vaughan, Ontario.  Further, the Company represented that it established its international footprint through a strategic partnership with Cannatrek Ltd. in Australia and a joint venture with StenoCare A/S ("StenoCare") in Denmark.

3.      Throughout the Class Period, the Company represented that it was a licensed producer of medical and recreational cannabis in Canada and that it maintained all necessary licensing.  Proper licensing is important to the Company, in material part, because the Canadian Cannabis Act forbids the export of unlicensed cannabis and provides that anyone who does so is guilty of an indictable offense and liable to imprisonment or fines.

4.      While the Company represented that its facilities were licensed, unknown to investors, from October 2018 through and March 2019, the Company was growing cannabis in five unlicensed rooms causing the Company's Niagara Perpetual Harvest Facility to be non-compliant with certain Canadian regulations, and the Company had shipped unlicensed cannabis from the Company's Niagara Perpetual Harvest Facility to at least StenoCare in Denmark in violation of the Canadian Cannabis Act.

5.      On July 8, 2019, before the market opened, CannTrust shocked investors when it disclosed that it received a compliance report from Health Canada notifying the Company that the Niagara Perpetual Harvest Facility greenhouse facility in Pelham, Ontario is non-compliant

with certain regulations.

6.      The Company's press release stated, in part, the following:

VAUGHAN, ON, July 8, 2019 – CannTrust Holdings Inc. ("CannTrust" or the "Company", TSX: TRST, NYSE: CTST) has received a compliance report from Health Canada notifying the Company that its greenhouse facility in Pelham, Ontario is non-compliant with certain regulations. CannTrust has accepted Health Canada's non-compliance finding and has taken actions to ensure current and future compliance.

The non-compliant rating is based on observations by the regulator regarding the growing of cannabis in five unlicensed rooms and inaccurate information provided to the regulator by CannTrust employees. Growing in unlicensed rooms took place from October 2018 to March 2019 during which time CannTrust had pending applications for these rooms with Health Canada. These rooms were constructed in accordance with regulations and Good Production Practices, and licenses were issued for each of the five rooms in April 2019. There are 12 rooms in total at the facility.

Health Canada has placed a hold on inventory which includes approximately 5,200kg of dried cannabis that was harvested in the previously unlicensed rooms in Pelham, until it deems that the Company is compliant with regulations. In addition, CannTrust has instituted a voluntary hold of approximately 7,500kg of dried cannabis equivalent at its Vaughan manufacturing facility that was produced in the previously unlicensed rooms.

CannTrust's operations at its Pelham and Vaughan facilities remain fully licensed and the Company continues to grow, cultivate, harvest and sell cannabis. Health Canada is conducting quality checks of product samples on hold at Pelham, with results expected in 10 to 12 business days. Due to the product on hold, some CannTrust customers and patients will experience temporary product shortages. The Company is exploring options to mitigate these shortages.

All product sold from the impacted rooms has passed quality control testing at Health Canada certified labs as well as CannTrust's own quality control processes and safety reviews.

"Our team has focused on building a culture of transparency, trust and excellence in every aspect of our business, including our interactions with the regulator. We have made many changes to make this right with Health Canada. We made errors in judgement, but the lessons we have learned here will serve us well moving forward," said Peter Aceto, Chief Executive Officer.

Corrective Actions and Additions to the CannTrust Executive Team

3

CannTrust has implemented a number of corrective actions including:

- Further comprehensive employee training
- Retained external advisors for an independent review of compliance processes
- Comprehensive review and update of processes and procedures
- Voluntarily advised Health Canada of issues that may impact compliance at its Vaughan facility regarding product storage . . .

Financial Outlook

At this time, the impact of these matters on CannTrust's financial results are unknown until Health Canada completes its quality testing of product from Pelham which is currently on hold. Further updates will be provided as they become available.

7.     On July 8, 2019, following this disclosure, the price of CannTrust's common stock declined on the NYSE by $1.11 per share or over 22%, from a closing price of $4.94 per share on July 5, 2019, to close at $3.83 per share on July 8, 2019 on heavy trading volume.

8.     Also on July 8, 2019, according to *MarketWatch*, investment and research firm Harvest Moon Research said the seizure was likely due to the Company's "overall disregard for Health Canada regulations and its licensing systems."  Harvest Moon reportedly stated that "the issue was brought to Health Canada's attention by former employees who were irked when the company's human resources department leaked its entire payroll information to every employee. That sparked a mini revolt, that led some of its staff to go to Health Canada to disclose how the company was breaking rules . . . Harvest Moon said a more serious issue is that CannTrust may have exported some of the illicit cannabis to markets it serves, which include Denmark and Australia. Under the Canadian Cannabis Act, that would be an indictable offense that could come with a prison term."

9.     On July 8, 2019 Beacon Securities downgraded CannTrust stock.   Beacon

Securities reportedly stated that "[w]hile licenses are issued by Health Canada on a site-specific basis, we would be surprised if the issues in Niagara do not somehow slow the licensing timeline for the outdoor grow in [British Columbia]. As discussed in our June 19th note, we assumed that the 2019 harvest would contribute to 2020 revenue/EBITDA. We have therefore reduced our F2020 revenue/EBITDA estimates from $415-million/$96-million to reflect heightened uncertainty regarding the company's growth profile. We have also reduced our valuation multiple from 23 times to 20 times EV/C2020E EBITDA. Canntrust has heretofore been regarded as one of the stronger Canadian producers from a Health Canada/compliance perspective, and we believe it could take quite some time for that image to heal from this morning's news."

10.     Similarly, on July 9, 2019, MarketWatch reported that BMO Capital Markets downgraded CannTrust stock.  BMO Capital Markets reportedly stated that "[i]t is unclear how the company would have commenced cultivation in unlicensed rooms and we are surprised by this development and the inability of CannTrust's internal operational controls to prevent this . . . In addition, it is unclear what Health Canada could decide with respect to the status of the affected inventory and finished products that were sold to the market."

11.     Also on July 9, 2019, the Financial Post reported that the Company's Chief Executive Officer, Defendant Peter Aceto ("Aceto") confirmed that some of the cannabis grown by Canntrust Holdings in unlicensed rooms at its Niagara facility has already been shipped to provinces across Canada.  Defendant Aceto reportedly told the Financial Post that one employee was terminated in relation to the unlicensed growing, but that a "root-cause analysis" would be conducted by the Company, with the help of Quality and Compliance Consulting Inc., to determine exactly who was responsible in sanctioning the growing of cannabis in yet-to-be-licensed rooms.

12.     Also on July 9, 2019, MarketWatch reported that StenoCare, the Company's Denmark-based joint venture partner, said it had received a number of batches of cannabis from CannTrust and after investigating, found that one was from part of the unlicensed CannTrust grow.

13.     On July 9, 2019, CannTrust shares declined from a closing price on July 8, 2018 of $3.83 per share, to close at $3.60 per share, a decline of $0.23 per share, or approximately 6% on volume of over seven million shares.

14.     On July 10, 2019, GMP Securities issued an analyst report that downgraded CannTrust stock and stated, in part the following:

> This week CannTrust announced that it received a report from Health Canada indicating that the company's Pelham greenhouse facility is non-compliant with certain regulations. This is mostly related to growing in five unlicensed rooms from October 2018 to March 2019 while the applications for these rooms were pending prior to the official licensing in April. As a result, Health Canada has placed 5.2 tonnes of product on hold and TRST has voluntarily placed an additional 7.5 tonnes of product on hold. . . .

> [T]he 12.7 tonnes that is currently on hold may cause a significant disruption in the company's supply chain, potentially resulting in a low amount of product available for sale in Q3. If the hold drags on, the company may opt to supplement the shortfall with wholesale sourcing. . . .

> **Investor confidence could be difficult to regain.** On June 17, 2019, Health Canada visited CannTrust's Pelham facility for a routine inspection. On July 3, the inspection report was provided to the company and indicated that its facility was noncompliant, subsequent to which TRST made the news public. In our view, the announcement and the ensuing sell-off in TRST shares has likely shaken investor confidence considerably. We expect that it could take time for CannTrust to regain this confidence and that the shares could trade at a discount to peers for some time.

15.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

II.     **JURISDICTION AND VENUE**

16.     The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Jurisdiction is conferred by Section 27 of the Exchange Act.  Venue is proper because CannTrust's common stock traded on the NYSE in this district during the Class Period and Defendants made materially false and misleading representations to investors that were disseminated to investors in this District.

17.     In connection with the material misrepresentations of facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

III.    **PARTIES**

18.     Plaintiff purchased CannTrust common stock as detailed in the certification attached hereto and was damaged thereby.

19.     Defendant CannTrust is incorporated in Ontario, Canada and maintains its principal executive offices at 3280 Langstaff Road, Unit 1, Vaughn, Ontario L4K 4Z8, Canada.  At the start of the Class Period the Company's stock traded on the Toronto Stock Exchange under the symbol "TRST" and on the OTC Markets Pink Open Market under the symbol "CNTTF".  On February 25, 2019, the Company's shares began trading on the NYSE under the symbol "CTST."  The Company's registered agent for service of process in the U.S. is CT Corporation System, 1015 15th Street, NW, Suite 1000, Washington, D.C. 20005.

20.     Defendant Aceto has served as the Company's Chief Executive Officer since October 1, 2018.  Defendant Aceto made materially false and misleading statements and material omissions in CannTrust filings with the SEC and SEDAR, press releases and on

public conference calls throughout the Class Period.

21.     Defendant Greg Guyatt ("Guyatt") has served as the Company's Chief Financial Officer since February 19, 2019. Defendant Guyatt made materially false and misleading statements and material omissions in CannTrust SEC and SEDAR filings.

22.     Defendant Ian Abramowitz ("Abramowitz") was the Company's Chief Financial Officer at the beginning of the Class Period through February 19, 2019.  As of February 19, 2019, Abramowitz serves as CannTrust's SVP of Global Investments and Partnerships. Defendant Abarmowitz made materially false and misleading statements and material omissions in SEDAR filings.

23.     Defendants Aceto, Guyatt, and Abramowitz are referred to herein as the "Individual Defendants".   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of CannTrust's press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each of the Individual Defendants was provided with copies of the Company's press releases or filings alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, but not to the public, each of the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.

24.     CannTrust and the Individual Defendants are collectively referred to as the "Defendants".

## IV.   CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the publicly traded common stock of CannTrust on the New York Stock Exchange ("NYSE") or any U.S.-based trading platform during the Class Period.

26.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.  As of December 31, 2018, CannTrust had over 105 million common shares outstanding.

27.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seek to represent.

## V.    FALSE AND MISLEADING STATEMENTS

28.    The Class Period begins on November 14, 2018, when the Company issued a press release that disclosed its financial results for the quarter ended September 30, 2018.  Also on November 14, 2018, Defendants Aceto and Abramowitz caused the Company to file Management's Discussion and Analysis ("MD&A") for the quarter ended September 30, 2018 with SEDAR ("Q3 2018 MD&A").  The Q3 2018 MD&A incorporated by reference the risk factors delineated in the Company's Annual Information Form filed with SEDAR on March 29, 2018 that represented the following concerning licensing:

*Reliance on Licenses* . . . .

The operations of the Company require it to obtain ACMPR [Access to Cannabis for Medical Purposes Regulations] Licences for the transportation, distribution, production and sale of medical cannabis, and in some cases, renewals of existing licences from, and the issuance of permits by certain national authorities in Canada. The Company 22 believes that it currently holds or has applied for all necessary licences and permits to carry on the activities which it is currently conducting under applicable laws and regulations, and also believes that it is complying in all material respects with the terms of such licences and permits. . . .

**Change in Laws, Regulations and Guidelines** . . . .

The Company's operations are subject to various laws, regulations and guidelines relating to the manufacture, management, transportation, storage and disposal of medical cannabis as well as laws and regulations relating to health and safety, the conduct of operations and the protection of the environment. To the knowledge of management, other than the requirement that the Company make routine corrections that may be required by Health Canada from time to time, the Company is currently in compliance with all such laws. . . .

29.     Also on November 14, 2018, Defendants Aceto and Abramowitz filed Certifications with SEDAR on Form 52-109F2 that represented the following:

2. **No misrepresentations**: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings. . . .

30.     Also on November 14, 2018, the Company conducted a conference call with investors in which Defendants Aceto and Abramowitz participated.  Defendant Aceto represented that CannTrust was "one of only four [licensed] producers with at least nine provincial agreements." (Alteration in original).

31.     On March 28, 2019, the Company issued a press release that disclosed the Company's financial results for the quarter ended December 31, 2018.  Also on March 28, 2019, Defendants Aceto and Guyatt caused the Company to file its annual report for the year ended December 31, 2018 on Form 40-F with the SEC ("2018 Annual Report").  The 2018 Annual

Report, which was signed by Defendants Aceto and Guyatt, represented that the Company

maintained the licensing required under Canadian law to produce and sell cannabis:

> The Cannabis Licence for the Vaughan Facility expires on March 13, 2020 and
> the Cannabis Licence for the Niagara Facility expires on October 6, 2020. . . .

> Currently, the Company's activities and resources are focused on the operation of
> the Vaughan Facility and Niagara Facility, and its current licenses under the
> Cannabis Act are specific to the Vaughan and Niagara facilities.

32.     Also on March 28, 2019, the Company filed an Annual Information Form for 2018

with SEDAR that repeated the representations concerning licensing delineated in Paragraph 31.

33.     The 2018 Annual Report included Certifications signed by Defendants Aceto and

Guyatt pursuant to Section 203 of the Sarbanes-Oxley Act of 2002 that represented the following:

> 2. Based on my knowledge, this report does not contain any untrue statement of a
> material fact or omit to state a material fact necessary to make the statements
> made, in light of the circumstances under which such statements were made, not
> misleading with respect to the period covered by this report;

> 3. Based on my knowledge, the financial statements, and other financial
> information included in this report, fairly present in all material respects the
> financial condition, results of operations and cash flows of the issuer as of, and
> for, the periods presented in this report . . . .

34.     On April 8, 2019, the Company issued a press release titled "CannTrust Recieves

Health Canada Approval for Phase 2 Expansion" that represented its perpetual harvest

greenhouse in Pelham, Ontario was fully licensed:

> CannTrust Holdings Inc. ("CannTrust" or the "Company", TSX:TRST,
> NYSE:CTST) is pleased to announce that its cultivation and processing permit
> under Health Canada Cannabis Regulations was amended to include the final 20%
> of its Phase 2 expansion. The entire 450,000 sq. ft. of its perpetual harvest
> greenhouse in Pelham, Ontario, is now fully licensed.  "We have always been
> confident that our processes meet and exceed regulatory standards, and we now
> have further validation of this from our regulators," said Peter Aceto, Chief
> Executive Officer. "With this approval, CannTrust is set to meet its plan to reach
> 50,000kg of annualized capacity at the perpetual harvest greenhouse and continue
> providing award-winning products in a cost-effective manner.

35.     On May 3, 2019, the Company filed a prospectus supplement with the SEC and SEDAR to the short form base shelf prospectus dated March 18, 2019 for the offering of 36,363,636 shares of CannTrust common stock at $5.50 per share.  The Company sold 30,909,901 common shares in the offering for total gross proceeds to the Company of approximately $U.S.170 million, and certain shareholders sold 5,434,545 common shares in the offering.

36.     The Company's prospectus supplement included the following representations concerning the Company's licensing:

> Health Canada has issued licences to CannTrust Opco for each of our facilities (the "Cannabis Licences" and each a "Cannabis Licence").  The Cannabis Licence for the Vaughan Facility expires on March 13, 2020, and the Cannabis Licence for the Niagara Facility expires on October 6, 2020. . . .

37.     On May 14, 2019, the Company issued a press release in which it disclosed its financial results for the quarter ended March 31, 2019.  Also on May 14, 2019, Defendants Aceto and Guyatt caused the Company to file a report with the SEC on Form 6-K that included the Company's MD&A for the quarter ended March 31, 2019 ("Q1 2019 MD&A").  A substantially similar document was filed with SEDAR.

38.     The Q1 2019 MD&A incorporated by reference the representations delineated above in Paragraph 31.  Further, the Q1 2019 MD&A included certifications, signed by Defendants Aceto and Guyatt, that were substantially similar to the certifications alleged in Paragraph 29.

39.     Also on May 14, 2019, the Company conducted a conference call with investors in which Defendants Aceto and Guyatt participated.  Defendant Aceto represented that "[i]n April, we received Health Canada approval for the remaining 20% of our Phase II greenhouse . . . I think with phase II being completed, being fully licensed, where we're very close to being at full production capacity . . . ."

40.     The statements contained in Paragraphs 28-39, were materially false and misleading or omitted to state the following material facts: i) while the Company represented that its facilities were licensed, between October 2018 and March 2019 the Company had grown cannabis in five unlicensed rooms in violation of Canadian law causing the Company's Niagara Perpetual Harvest Facility in Pelham, Ontario to be non-compliant with certain Canadian regulations; ii) that the Company had shipped unlicensed cannabis from the Company's Niagara Perpetual Harvest Facility to at least StenoCare in Denmark in violation of the Canadian Cannabis Act; iii) that Company employees provided materially inaccurate information to Canadian regulators; and iv) that due to these undisclosed material negative conditions, the Company's was facing undisclosed, material risks, including inventory holds of a material amount of the Company's product, product shortages as a result of inventory holds, increased regulatory scrutiny, material delays to further licensing, and the material loss of customers.

41.     Defendants' statements in the Company's MD&A's were materially misleading for the additional reason that they violated SEC Regulation S-K.  The SEC created specific rules governing the content of disclosures made by public companies in their filings with the SEC. SEC Regulation S-K requires every quarterly and annual filing contain "Management's Discussion and Analysis of Financial Condition and Results of Operations", drafted in compliance with Item 303 of Regulation S-K, 17 C.F.R. §§ 229.303. The MD&A requirements are intended to provide material historical and prospective textual disclosures that enable investors and others to assess the financial condition and results of operations of a company, with emphasis on that company's prospects for the future.

42.     Specifically, Item 303(a)(3) of Regulation S-K requires that the MD&A section of a company's filings with the SEC (i.e. Form 40-F), among other things:

     (i)     Describe any unusual or infrequent events or transactions or any significant economic changes that materially affected the amount of reported income from continuing operations and, in each case, indicate the extent to which income was so affected. In addition, describe any other significant components of revenues or expenses that, in the registrant's judgment, should be described in order to understand the registrant's results of operations.

     (ii)    Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in the relationship shall be disclosed.

43.    Regulation S-K also states that "[t]he discussion and analysis [section] shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition."

44.    Defendants violated the affirmative disclosure duties imposed by Regulation S-K, and thus Section 10(b) of the Exchange Act, by failing to disclose the Company's failure to comply with Canadian law and that the Company was subject to numerous undisclosed risks that would adversely affect its current business, as well as its future revenues and growth prospects.

45.    The foregoing concealed material facts were required to be disclosed by Defendants because they were, among other things: (i) material events and uncertainties known to CannTrust management that would cause CannTrust's reported financial information not to be necessarily indicative of the Company's future operating results or of future financial condition; (ii) known trends or uncertainties that have had or that Defendants reasonably expected will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations; and (iii) unusual transactions or significant economic changes that were materially

14

affecting the amount of reported operating and net income from CannTrust's continuing operations.

## VI.   THE TRUTH BEGINS TO EMERGE

46.     On July 8, 2019, before the market opened, CannTrust shocked investors when it disclosed that is received a compliance report from Health Canada notifying the Company that its greenhouse facility in Pelham, Ontario is non-compliant with certain regulations, as alleged in Paragraph 6.

47.     On July 8, 2019, following this disclosure, the price of CannTrust's common stock declined by $1.11 or over 22%, from a closing price of $4.94 per share on July 5, 2019, to close at $3.83 per share on July 8, 2019 on heavier than usual volume.

48.     On July 9, 2019, additional negative news concerning the Company was disclosed, as alleged in Paragraphs 10-12, that caused the Company's stock to decline an additional $0.23 per share or by 6%.

## VII.   LOSS CAUSATION/ECONOMIC LOSS

49.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of CannTrust's common stock and operated as a fraud or deceit on Class Period purchasers of CannTrust common stock by misrepresenting the Company's operating condition and future business prospects.  Defendants achieved this by making positive statements about CannTrust's business, compliance and licensing, while they knew, or recklessly disregarded, that certain of the Company's operations were non-compliant with Canadian regulations. Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of CannTrust's common stock fell precipitously as the prior artificial inflation came out of

the price of CannTrust's common stock.  As a result of their purchases of CannTrust common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

50.     As a direct result of the public revelations regarding the truth about the condition of CannTrust's business and the negative adverse factors that had been impacting CannTrust's business during the Class Period, the price of CannTrust's common stock materially declined. This drop removed the inflation from the price of CannTrust's common stock, causing real economic loss to investors who purchased CannTrust common stock during the Class Period.

51.     The decline in the price of CannTrust's common stock at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of CannTrust's share price declines negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## VIII.   <u>FRAUD-ON-THE-MARKET DOCTRINE</u>

52.     At all relevant times, the market for CannTrust's common stock was an efficient market for the following reasons, among others:

(a)     The Company's common stock met the requirements for public listing and were listed and actively traded on the NYSE and TSX;

(b)     As a regulated issuer, the Company filed periodic public reports with the SEC and SEDAR;

(c)     The Company regularly issued press releases which were carried by national news wires.  Each of these releases was publicly available and entered the public

marketplace; and

(d)     A number of securities analysts regularly followed and analyzed the Company and issued reports, including Canaccord Genuity, Eight Capital, Bloom Burton, Beacon Securities, Haywood Securities Inc., GMP Securities, BMO Capital Markets, Roth Capital Partners, RBC Dominion Securities, Jeffries Financial Group, Paradigm Capital, Cormack Securities and BofAS.

53.     As a result, the market for the Company's publicly traded common stock promptly digested current information with respect to CannTrust from all publicly available sources and reflected such information in the price of the Company's common stock.  Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of the publicly traded common stock of CannTrust at artificially inflated prices and a presumption of reliance applies.

## IX.     ADDITIONAL SCIENTER ALLEGATIONS

54.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  By virtue of their receipt of information reflecting the true facts regarding CannTrust, Defendants participated in the fraudulent scheme alleged herein.

55.     Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial

period, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

56.     Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of CannTrust, issued statements and press releases on behalf of CannTrust and had the opportunity to commit the fraud alleged herein.  During the Class Period, Defendants were motivated to mislead investors and conceal the truth about the Company's operations in order to raise capital through a public offering of common stock.  On May 3, 2019, the Company conducted a public offering that, when including the underwriters' exercise of their option to purchase additional shares, raised over $195 million for the Company.

## X.     <u>NO SAFE HARBOR</u>

57.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false and misleading statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of CannTrust who knew that those statements were false when made.

## FIRST CLAIM FOR RELIEF
### For Violation of Section 10(b) of the 1934 Act
### and Rule 10b-5 Against All Defendants

58.     Plaintiff incorporates Paragraphs 1-57 by reference.

59.     During the Class Period, Defendants disseminated or approved the false and misleading statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60.     Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of CannTrust's publicly traded common stock during the Class Period.

61.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for CannTrust's publicly traded common stock.  Plaintiff and the Class would not have purchased CannTrust's common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

62.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of

CannTrust common stock during the Class Period.

### SECOND CLAIM FOR RELIEF
### For Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

63.     Plaintiff incorporates Paragraphs 1-57 by reference.

64.     The Individual Defendants acted as controlling persons of CannTrust within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and SEDAR, and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

66.     As set forth above, CannTrust and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to

Section 20(a) of the Exchange Act. As a direct and proximate result of CannTrust's and the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 11, 2019

**KAPLAN FOX & KILSHEIMER LLP**

By: _/s/_        *Jeffrey P. Campisi*

Robert N. Kaplan
Jeffrey P. Campisi
Jason A. Uris
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
rkaplan@kaplanfox.com
jcampisi@kaplanfox.com
juris@kaplanfox.com

*Attorneys for Plaintiff*

## **CERTIFICATION**

I, Gustavo Alvarado, hereby certify as follows:

1. I have reviewed a complaint prepared against CannTrust Holdings Inc. and others alleging violations of the federal securities laws and authorize the filing of a complaint.

2. I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary.

3. Within the 3-year period preceding the date hereof, I have not sought to serve or served as a representative party on behalf of a class in any action brought under the federal securities laws.

4. My transactions in CannTrust Holdings Inc. during the proposed class period are set forth below:

| TRADE DATE | TRANSACTION | PRICE PER SHARE | QUANTITY |
|------------|-------------|-----------------|----------|
| 5/28/2019 | Purchase | $5.90 | 100 |
| 5/28/2019 | Purchase | $5.90 | 4 |

5. I did not purchase CannTrust Holdings Inc. at the direction of my counsel, or in order to participate in any private action under the federal securities laws; and

6. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.


Date: July 10, 2019


DocuSigned by:

Gustavo.Alvarado